Theodore A. PIERCE and Theodore R. Pierce, d/b/a Pierce & Pierce; S & P Farms, Inc., an Arizona Corporation; Gene Narramore and F. L. Narramore, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

CA No. 78-3661.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 18, 1980.

Decided July 6, 1981.

Rehearing Denied August 6, 1981.

J. Gordon Cook, Renaud, Cook, & Videan, P.A., Phoenix, Ariz., for plaintiffs-appellants.

Jose M. Uranga, Washington, D.C., for defendant-appellee.

Before DUNIWAY and TRASK, Circuit Judges, and JAMESON,* District Judge.

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

TRASK, Circuit Judge:

This appeal involves an action against the United States brought by several individuals and a corporation under the Federal Tort Claims Act, 28 U.S.C. § 1346. Appellants sued the Government for damages to their land suffered because of impoundment of flood waters behind the Painted Rock Flood Control Dam on the Gila River in Arizona.

The Government impounded flood waters behind the dam to minimize flood damage to downstream landowners. By so doing, however, it deviated from the dam's recommended water discharge schedule. The impoundment caused the flood waters to back up and effectively submerge large parts of appellants' land, which is upstream from the dam. Although the land was subject to a flowage easement acquired by the Government, appellants contend that the easement did not permit the type of flooding that occurred here. The district court dismissed their complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim.

Appellants contend that the Government is not immune from liability for damage caused by the impoundment of floodwaters, notwithstanding 33 U.S.C. § 702c, which states that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." In this circuit, the immunity statute applies only when the flood damage is caused by a project related to flood control, and does not apply when the flood damage is "wholly unrelated to any act of Congress authorizing expenditure of federal funds for flood control." *Aetna Insurance Co. v. United States*, 628 F.2d 1201, 1203 (9th Cir. 1980); *Peterson v. United States*, 367 F.2d 271, 275 (9th Cir. 1966). Appellants argue that damage resulting from backwater[1] is not within the scope of the immunity statute or, in the alternative, that the dam operator's decision

1. "Backwater" is defined as "a body of water resulting from an obstruction or opposing current." Webster's Third New Int'l Dict. (unabr. 1971).

to deviate from the recommended water discharge schedule was an unauthorized activity also not within the scope of the statute. Accepting as true the factual allegations in appellants' complaint, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), we affirm on the ground that the Government is immune from liability under 33 U.S.C. § 702c.

■ It is undisputed that the Painted Rock Dam was constructed to control flood waters on the Gila River. Flood Control Act of 1950, Pub.L. No. 516, Title II, 64 Stat. 170, 176 (1950). Appellants argue, however, that the damage to their property resulted, not from the Government's attempts at flood control, *e. g.*, release of flood waters, but rather from backwaters that resulted from the Government's impoundment of the flood waters. It is appellants' contention that section 702c does not grant the Government immunity against liability for the tort of trespass by backwater. This argument is without merit.

The Eighth Circuit addressed this very contention in *Taylor v. United States*, 590 F.2d 263 (8th Cir. 1979), holding that there is no distinction between flood waters and backwaters for purposes of section 702c: "[S]ection 702(c) 'bars liability for damages that result (*even indirectly*) from floods.' " *Id.* at 267 (emphasis added) (quoting *National Manufacturing Co. v. United States*, 210 F.2d 263, 271 (8th Cir.), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954)). *See also Aetna Insurance Co. v. United States, supra*, 628 F.2d 1204 (flood caused by government's negligence is covered by § 702c); *McClaskey v. United States*, 386 F.2d 807 (9th Cir. 1967) (backwater caused by government railway crossing implicitly held covered by § 702c); *Stover v. United States*, 204 F.Supp. 477, 485 (N.D.Cal.1962) ("flood" is water that inundates an area of the surface of the earth where it ordinarily would not be expected), *aff'd*, 332 F.2d 204

(9th Cir.), *cert. denied*, 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964). This holding is consistent with the broad language and purpose of the immunity statute. *See, e. g., McClaskey v. United States, supra* (damage resulting from flood control is within immunity statute even though project is not exclusively devoted to flood control); *Morici Corp. v. United States*, 491 F.Supp. 466 (E.D.Cal.1980) (§ 702c applies to seepage waters). Appellants' first argument, therefore, does not state a claim.

■ Appellants also contend that the Government's decision to impound the flood waters, rather than release them in accordance with the recommended minimum discharge schedule, *see* Report of the Chief of Engineers, *Examination of Rivers and Harbors III*, H.R.Doc. No. 331, 81st Cong., 1st Sess. 27 (1950), constituted unauthorized activity that was wholly unrelated to any act of Congress authorizing expenditures of federal funds for flood control. Appellants contend that the minimum discharge schedule was incorporated into the statute authorizing the Painted Rock Dam.[2] The Government's conduct here, appellants argue, is similar to the Government's unprotected conduct in *Peterson v. United States, supra*. Thus, appellants contend that here, as in *Peterson*, the Government is not immune under section 702c.

Appellants' reliance on *Peterson* is misplaced. We stated there that the purpose of the immunity statute is to safeguard the United States against liability for damages resulting from floods whenever the United States by an act of Congress was engaged in the minimization of such damage. We then held that the military's decision to dynamite the ice jam was wholly unrelated to any act of Congress authorizing expenditures of federal funds for flood control. 367 F.2d at 275.

---

2. This statute is a part of section 204 of the Flood Control Act of 1950, *supra*, 64 Stat. at 176, and provides in part: "The project for the Painted Rock Reservoir ... is hereby authorized substantially in accordance with the recommendations of the Chief of Engineers in [H.R. Doc. No. 331]." We assume without deciding that section 204 did incorporate the minimum discharge recommendations of the Chief of Engineers. The district court did not rule on this question.

In the case before us, however, the release or nonrelease of flood waters impounded in the dam was integrally related to a Congressional Act whose sole purpose was flood control. Thus, even if we assume that the discharge schedule was fully integrated into the statute authorizing the dam, the Government's decision to temporarily deviate from that schedule is not at all similar to the wholly unauthorized activity of the military personnel in *Peterson.* Indeed, the Government's decision to deviate from the discharge schedule was for the purpose of enhancing its capacity to control flood waters. Its actions, therefore, were integrally related to the flood control purpose of the statute authorizing the dam.

We hold that section 702c immunizes the Government against liability for its actions in this case. Accordingly, the district court's dismissal of appellants' complaint is AFFIRMED.